# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————————

№ 24-CV-1402 (RER)

———————————————

DAVID REINER, KIDLINE ENTERPRISES INC., TELE GO INC., INFINITE SOLUTIONS NY INC., CHAIM KOHN, JCR PRINTING, YOSSI REINER

VERSUS

MENDEL PANETH AND SARAH PANETH

———————————

**MEMORANDUM & ORDER**

———————————

**RAMÓN E. REYES, JR., District Judge:**

This bankruptcy appeal arises from a business dispute concerning the operation of Kidline Enterprises Inc. ("Kidline"). After disagreements arose among the principals, the parties submitted disputes to rabbinical arbitration. Later, Mendel Paneth and Sarah Paneth (collectively, "Appellees") commenced multiple state court actions. The Supreme Court of the State of New York, Kings County ("Kings County Supreme Court") ordered the matter to proceed in arbitration. That arbitration was stayed when Mendel Paneth filed for bankruptcy in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court").

David Reiner ("Reiner"), Kidline, Tele Go Inc., Infinite Solutions NY Inc., Chaim Kohn, JCR Printing, and Yossi Reiner (collectively, "Appellants") moved in the Bankruptcy Court to compel arbitration and to lift the automatic stay. On February 8, 2024, the Bankruptcy Court entered an order (the "February 8 Order") denying Appellants' motion. Appellants appealed the February 8 Order to the Court.

For the reasons set forth herein, and upon review of the record and applicable law, the February 8 Order of the Bankruptcy Court is affirmed, and the appeal is denied.

## **BACKGROUND**

Appellants filed the Appendix – Record on Appeal Bate Stamped at ECF No. 4 and later filed an Amended Appendix Table of Contents at ECF No. 7. Together, these filings constitute the Appendix Record ("App. R."). Unless otherwise noted, citations are to the Transcript of the Hearing ("Hr'g Tr."), App. R. 001613–001709.

Mendel Paneth formed Kidline to publish a children's magazine with Eli Nadler ("Nadler") and Reiner. (Hr'g Tr. at 8:8–11, App. R. 001620). At formation, Mendel Paneth and Reiner each held 45 percent of Kidline, and Nadler held 10 percent. (Hr'g Tr. at 8:12–15). Reiner later acquired Nadler's interest, and eventually owned 55 percent of Kidline. (Hr'g Tr. at 7:12–13). The dispute arises from the parties' joint business venture. (Hr'g Tr. at 8:16–20). Disputes were brought before a rabbinical arbitrator—Rabbi Bergman. (Hr'g Tr. at 8:20–24). In October 2020, Rabbi Bergman issued an interim award directing Appellees to restore Reiner and Klein's access to corporate records and accounts. (Hr'g Tr. at 9:9–13).

Following the arbitrator's interim award, Appellees commenced an action in the Supreme Court of the State of New York, Richmond County ("Richmond County Supreme Court"). (Hr'g Tr. at 9:14–17). Appellees also commenced several additional actions in Kings County Supreme Court and Richmond County Supreme Court.[1] (Hr'g Tr. at 9:18–

---

[1] These included *Sarah Paneth a/k/a Sury Paneth and Mendel Paneth, Individually and on behalf of Kidline Enterprises Inc. v. David Reiner and Yoel Klein*, Index No. 151765/2020 (Sup. Ct. Richmond Cnty.); *Sarah Paneth a/k/a Sury Paneth, Individually and on behalf of Kidline Enterprises Inc. v. Infinite Solutions NY Inc. and Chaim Kohn*, Index No. 150287/2021 (Sup. Ct. Richmond Cnty.); and *Sarah Paneth a/k/a Sury Paneth,*

22). On April 21, 2021, the Kings County Supreme Court issued an order to consolidate the four state court actions and compel the parties to arbitration. (Hr'g Tr. at 10:7–12). The Kings County Supreme Court found that Mendel Paneth had signed an arbitration agreement and that the parties had submitted to arbitration with counsel. (*Sury Paneth a/k/a Sarah Paneth, individually and on behalf of Kidline Enterprises, Inc. v. Tele Go Inc.*, Index No. 515628/2020 (N.Y. Sup. Ct. Kings Cty. Apr. 8, 2021), App. R. 000163–67). The arbitration proceedings continued for more than eleven sessions but did not conclude. (Hr'g Tr. at 10:21–23, App. R. 001622).

On June 19, 2022, Mendel Paneth filed for Chapter 11 bankruptcy, automatically staying the arbitration. (Hr'g Tr. at 7:9–11). On September 20, 2022, Appellants Reiner and Kidline commenced an adversary proceeding seeking to declare their claims nondischargeable under 11 U.S.C. §§ 523(a)(2), (4), and (6). (Hr'g Tr. at 7:12–18). On September 23, 2022, Appellants filed a motion to compel arbitration and for relief from the automatic stay. (Hr'g Tr. at 7:21–24).

On February 7, 2024, the Bankruptcy Court delivered its oral ruling, denying Appellants' motion to compel arbitration and for relief from the automatic stay, and declining to abstain. (Hr'g Tr., App. R. 001613–001709). The Bankruptcy Court memorialized its ruling in the Order Denying Motion to Compel Arbitration and Declining to Permissively Abstain. (App. R. 001606–08).

The February 8 Order is now before the Court on appeal.

---

*Individually and on behalf of Kidline Enterprises Inc. v. JCP Printing and Yossi Reiner*, Index No. 150309/2021 (Sup. Ct. Richmond Cnty.). These actions were later consolidated into the Kings County proceeding, *Sury Paneth a/k/a Sarah Paneth and Mendel Paneth, Individually and on behalf of Kidline Enterprises Inc. v. Tele Go Inc., David Reiner, Yoel Klein, Infinite Solutions NY Inc., Chaim Kohn, JCP Printing, Inc., and Yossi Reiner*, Index No. 515628/2020 (Sup. Ct. Kings Cnty.).

## DISCUSSION

I.    Motion to Compel Arbitration

A.    The State Court's Arbitration Order Has Preclusive Effect Under 28 U.S.C. § 1738

As a threshold matter, the Court considers whether the Kings County Supreme Court's order to compel arbitration is entitled to preclusive effect in this proceeding.

1.    Standard of Review

The applicability of issue preclusion is a question of law subject to de novo review. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 285 (2d Cir. 2002) (reviewing an issue-preclusion determination de novo).

2.    Full Faith and Credit

The full faith and credit statute, 28 U.S.C. § 1738, provides that "[state] judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . .  as they have by law or usage in the courts of such State . . . from which they are taken." A federal court must give "the same preclusive effect to a state-court judgment as another court of that state would give." *Exxon Mobil Corp. v. Saudi Basic Indus. Inc.*, 544 U.S. 280, 282 (2005) (quoting *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 523 (1986)). The question, therefore, is whether the Kings County Supreme Court's order would be accorded preclusive effect under New York law.

3.    Collateral Estoppel

Under New York Law, the doctrine of collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action . . . and decided against that party or those in privity, whether or not the tribunals or causes of action are the same." *Ryan v N.Y. Tel. Co.*, 62 N.Y.2d 494, 500 (1984). "Collateral

4

estoppel comes into play when four conditions are fulfilled: '(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.'" *Conason v. Megan Holding, LLC*, 25 N.Y.3d 1, 17 (2015) (citations omitted).

Here, the Bankruptcy Court determined that collateral estoppel did not apply to the Kings County Supreme Court's order compelling arbitration. *In re Paneth*, Hr'g Tr. at 36:12–15, No. 1-22-41414-NHL (Bankr. E.D.N.Y. Feb. 8, 2024). The Bankruptcy Court stated that "the decision and order really recites that 'Mendel Paneth signed an agreement to arbitrate,' which is not a finding that there is a fully-executed and enforceable agreement to arbitrate." *Id.* at 35:22–25. According to the Bankruptcy Court, "[t]here were no findings on issues that are entitled to collateral estoppel affecting this motion or in the pending adversary proceeding to determine the dischargeability of any debt owed to Reiner and Kidline." *Id.* at 36:12–15. The Court disagrees.

First, for collateral estoppel to apply, it is "critical that the issues are identical." *People v. Roselle,* 84 N.Y.2d 350, 357 (1994). The Kings County Supreme Court's order contains two determinations: (1) a directive that the consolidated litigation proceed in arbitration; and (2) an express finding that "Mendel Paneth signed an agreement to arbitrate before Rabbi Moshe Bergman" and that the parties "submitted to arbitration" while represented by counsel. *Sury Paneth a/k/a Sarah Paneth, individually and on behalf of Kidline Enterprises, Inc. v. Tele Go Inc.*, Index No. 515628/2020, at 3 (N.Y. Sup. Ct. Kings Cty. Apr. 8, 2021); (App. R. 000166).

The first determination, though made on a motion to compel, is not the identical issue here because it resolved only a CPLR § 7503 forum question in state-law litigation, whereas the bankruptcy proceeding requires the Bankruptcy Court to decide whether to defer to arbitration in light of core bankruptcy matters under the Federal Arbitration Act and the Bankruptcy Code. That determination is therefore too broad to supply the identical issue for collateral estoppel.

For preclusion purposes, only the second determination is at issue here. In granting the motions "seeking to compel arbitration before the selected Arbitrator," the Kings County Supreme Court expressly stated that "Mendel Paneth signed an agreement to arbitrate before Rabbi Moshe Bergman" and ordered the parties to proceed in arbitration. *Paneth v. Tele Go Inc.*, Index No. 515628/2020, at 3; (App. R. 000166). Under New York law, a court cannot compel arbitration without first determining that such an agreement exists. *See Rockland Cnty. v. Primiano Constr. Co.*, 51 N.Y.2d 1, 6 (1980) (the "threshold question[]" on a motion to compel arbitration is "whether the parties made a valid agreement to arbitrate"). The order was necessarily premised on a finding that an agreement to arbitrate existed. The Bankruptcy Court, however, rejected the view that the state court's decision amounted to a finding of a "fully-executed and enforceable agreement to arbitrate." *In re Paneth*, Hr'g Tr. at 35:20–25, No. 1-22-41414-NHL.

Therefore, the existence of a valid arbitration agreement, which is the same agreement at issue in the bankruptcy proceeding, is an identical issue in the Kings County litigation and in the bankruptcy proceeding.

Second, the Court finds that the issue of the existence of a valid arbitration agreement had been actually litigated and decided. "[C]ollateral estoppel effect will only

be given to matters 'actually litigated and determined' in a prior action." *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 456 (1985). "For a question to have been actually litigated . . ., it must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." *Halyalkar v. Bd. of Regents of State of N.Y.*, 72 N.Y.2d 261, 268 (1988). "An issue is not actually litigated if, for example, there has been a default, a confession of liability, a failure to place a matter in issue by proper pleading or even because of a stipulation." *Kaufman*, 65 N.Y.2d at 456–57.

Here, the Kings County Supreme Court's order reflects that the existence of a valid arbitration agreement was placed in dispute through multiple motions to compel arbitration under CPLR § 7503. There is no indication that the order was entered on default or by stipulation, and the record reflects that the Appellees were represented by counsel. Accordingly, the question of whether a valid arbitration agreement existed was "actually litigated and decided" within the meaning of New York collateral estoppel law.

Third, the Court finds Appellees had a full and fair opportunity to litigate the issue in the Kings County Supreme Court. A determination whether the first action provided a full and fair opportunity requires consideration of "the 'realities of the [prior] litigation,' including the context and other circumstances which may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him." *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494, 501 (1984) (quoting *People v. Plevy*, 52 N.Y.2d 58, 65 (1980)). "Among the specific factors to be considered are the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the

foreseeability of future litigation." *Id.* (quoting *Gilberg v. Barbieri*, 53 N.Y.2d 285, 292 (1981); *Schwartz v. Pub. Adm'r*, 24 N.Y.2d 65, 72 (1969)).

Here, the record reflects that, following the state court's order compelling arbitration, Sarah Paneth filed a notice of appeal to the Second Department designating the decision as a final judgment. Sarah Paneth sought an interim stay of further arbitration proceedings, which the Second Department denied in an order entered May 6, 2021. (*See* App. R. 000155). By letter dated May 13, 2021, Sarah Paneth withdrew her appeal, and the Second Department formally dismissed it by order dated May 19, 2021. (*See* App. R. 000159.) These actions demonstrate that Appellees had both the incentive and the opportunity to challenge the state court's determination, were represented by counsel, and engaged in meaningful litigation over the arbitrability issue. Nothing in the record suggests that procedural or practical barriers prevented Appellees from fully contesting the issue before the state court.

Fourth, the Kings County Supreme Court's order compelling arbitration constitutes a final determination for collateral estoppel purposes. Under New York law, a "final judgment" for preclusion purposes includes "any judicial decision upon a question of fact or law which is not provisional and subject to change and modification in the future by the same tribunal." *Bannon v. Bannon*, 270 N.Y. 484, 489 (1936). This standard may be met by a "final order in a special proceeding [which] conclusively determine[s] every question at issue therein." *Id.* at 489–90; *see also Slater v. Am. Mineral Spirits Co.*, 33 N.Y.2d 443, 446 (1974) (distinction between final orders and final judgments is immaterial if finality is clear); *Aziz v. Butt*, 73 Misc. 3d 1233(A) (Sup. Ct. Westchester Cty. 2021) (giving preclusive effect to prior special proceeding).

Here, the Kings County Supreme Court's order granted the branches of the motions brought under CPLR § 7503(a) to compel the Appellees to proceed before the selected arbitrator. No further proceedings in Kings County could have altered that conclusion, as the merits were left to the arbitrator. Accordingly, the order meets New York's finality requirement for collateral estoppel purposes.[2]

All elements of collateral estoppel are satisfied, and the Court reverses the Bankruptcy Court's determination and holds that the Kings County Supreme Court's finding of a valid arbitration agreement is conclusively established for purposes of this proceeding. Because that finding is entitled to preclusive effect, the Court does not reach Appellants' alternative arguments that the Bankruptcy Court erred in its factual analysis of the arbitration agreements in the record.[3]

B. The Arbitration Should Be Compelled Under the Federal Arbitration Act

Having determined that the existence of a valid arbitration agreement is conclusively established by collateral estoppel, the Court next considers whether arbitration should nonetheless be compelled in the context of this bankruptcy proceeding.

---

[2] Appellants assert that the Bankruptcy Court concluded the Kings County Supreme Court's decision was not final because Appellants' underlying causes of action were not decided. (Appellants' Br. at 31, ECF No. 4). That assertion does not accurately reflect the Bankruptcy Court's reasoning. The Bankruptcy Court stated: "There has been no enforceable or final determination by a state court or any tribunal for that matter of any liability owed by the Debtor to Reiner or Kidline." *In re Paneth*, Hr'g Tr. at 36:21–24, No. 1-22-41414-NHL. The Bankruptcy Court's statement addressed the absence of a final determination on liability, not the finality of the arbitrability ruling itself.

[3] Appellants also invoke the Rooker–Feldman doctrine. (Appellants' Br. at 33–36, ECF No. 4). The Court finds it unnecessary to reach that issue. As explained, collateral estoppel requires the Court to give preclusive effect to the Kings County Supreme Court's express determination that Mendel Paneth executed a valid agreement to arbitrate. That issue of validity is therefore foreclosed, and the broader question of whether arbitration should proceed in the context of this bankruptcy case will be addressed under the standards of the Bankruptcy Code and federal arbitration law. Because the matter is resolved under preclusion principles, the Court does not review the Bankruptcy Court's ruling on the Rooker–Feldman doctrine.

1.    Legal Framework

The Federal Arbitration Act establishes a "federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and provides that such agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has held, however, that "like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987). The Court further held that "[t]he burden is on the party opposing arbitration . . . to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* Such congressional intent, the Court explained, may be found in the statutory text, the legislative history, or "from an inherent conflict between arbitration and the statute's underlying purposes." *Id.*

In determining whether to compel arbitration in the bankruptcy context, the Second Circuit has instructed that the bankruptcy court must conduct a structured inquiry.[4] *In re Anderson*, 884 F.3d 382, 387–88 (2d Cir. 2018). First, the bankruptcy court must

---

[4] Some courts in the Second Circuit have articulated the applicable standard in a four-part test, asking: "first, [whether] the parties agreed to arbitrate; second, [whether] the scope of that agreement" covers the claims; "third, if federal statutory claims are asserted, [whether] Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, [whether] to stay the balance of the proceedings pending arbitration." *Bethlehem Steel Corp. v. Moran Towing Corp. (In re Bethlehem Steel Corp.)*, 390 B.R. 784, 789 (Bankr. S.D.N.Y. 2008) (citation omitted); *see also In re Celsius Network LLC*, 658 B.R. 643, 659 (Bankr. S.D.N.Y. 2024). The Court applies instead the three-part "inherent conflict" framework derived from *In re U.S. Lines, Inc.*, 197 F.3d 631 (2d Cir. 1999), *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104 (2d Cir. 2006), and *In re Anderson*, 884 F.3d 382 (2d Cir. 2018). The difference in formulation is not substantive: both approaches ultimately turn on the same inquiry—whether compelling arbitration would inherently conflict with the purposes of the Bankruptcy Code. *See* Leslie A. Berkoff & Theresa A. Driscoll, *To Enforce or Not to Enforce: What Test Should Courts Apply When Faced With Arbitration Agreements In Bankruptcy?*, 28 J. BANKR. L. & PRAC. 2 (2019) (observing that "courts often merge the second and third steps in analyzing whether their disputed claims are covered by the arbitration agreement and the extent to which the bankruptcy court may stay arbitration.").

"determine . . . whether the issue involves a 'core' or 'non-core' proceeding." *Id.* "If the proceeding is 'non-core,' 'bankruptcy courts generally must stay' the proceedings 'in favor of arbitration.'" *Id.* (quoting *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 166 (2d Cir. 2000)). Second, "[i]f the matter involves a core proceeding, the bankruptcy court is tasked with engaging in a 'particularized inquiry into the nature of the claim and the facts of the specific bankruptcy.'" *Id.* (quoting *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006)). Third, "if the bankruptcy court determines that arbitration would create a 'severe conflict' with the purposes of the Bankruptcy Code, it has discretion to conclude that 'Congress intended to override the Arbitration Act's general policy favoring the enforcement of arbitration agreements.'" *Id.* (quoting *Hill*, 436 F.3d at 108).

The standard of review follows from this framework. *Id.* The Second Circuit has held that "the bankruptcy court's determinations of whether the proceeding is core or non-core and whether arbitration would present the sort of 'severe conflict' with the Bankruptcy Code that would make arbitration inappropriate" are subject to de novo review. *Id.* (citing *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006)). The Second Circuit further explained that "[if] the bankruptcy court's legal analysis was correct, we review its decision to either stay the proceedings or decline to enforce the arbitration agreement for abuse of discretion." *Id.* (citing *In re U.S. Lines, Inc.*, 197 F.3d 631, 641 (2d Cir. 1999)).

2.    Core Proceeding

Applying this framework, the Court first considers whether the claims at issue are "core" or "non-core" within the meaning of the Bankruptcy Code.

In 28 U.S.C. § 157(b)(2), Congress set forth a nonexclusive list of 16 types of proceedings deemed core to the authority of the bankruptcy court, including, inter alia,

"determinations as to the dischargeability of particular debts." 28 U.S.C. § 157(b)(2)(I). Because the adversary proceeding seeks a determination of dischargeability under 11 U.S.C. §§ 523(a)(2), (4), and (6), it falls squarely within the category of core proceedings expressly identified by Congress.[5] Therefore, the Court affirms the bankruptcy court's determination that this adversary proceeding is a "core proceeding."

### 3.    Severe Conflict

The Court next considers whether compelling arbitration would create the kind of "severe conflict" with the Bankruptcy Code that permits overriding the strong federal policy in favor of arbitration. *See MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006).

Under 28 U.S.C. §§ 1334 and 157, the bankruptcy court's authority in this regard is grounded in its "broad, well-established powers" to preserve the integrity of the reorganization process. *In re U.S. Lines, Inc.*, 197 F.3d 631, 640 (2d Cir. 1999) (quoting *LTV Corp. v. Miller*, 109 B.R. 613, 621 (S.D.N.Y. 1990)). Section 105 of the Bankruptcy Code authorizes the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Likewise, section 362 imposes an automatic stay of "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor." 11 U.S.C. § 362(a)(1). The purpose of automatic stay is to "allow the bankruptcy court to centralize all disputes

---

[5] Appellants distinguish between "procedurally core" and "substantively core" claims, arguing that the need to file proofs of claim in bankruptcy does not transform otherwise arbitrable disputes into core proceedings. (Appellants' Br. at 48–52, ECF No. 4). This distinction, however, does not change the outcome here. The Second Circuit has made clear that "[c]laims that clearly invoke substantive rights created by federal bankruptcy law necessarily arise under Title 11 and are deemed core proceedings. So too are proceedings that, by their nature, could arise only in the context of a bankruptcy case." *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108–09 (2d Cir. 2006) (citations omitted). Whether labeled procedurally or substantively core, the claims at issue here involve the dischargeability of debt—an issue that arises only in bankruptcy and falls within the Bankruptcy Court's jurisdiction.

concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990). In cases where the FAA and the Bankruptcy Code intersect, courts have recognized a "conflict of near polar extremes: bankruptcy policy exerts an inexorable pull towards centralization while arbitration policy advocates a decentralized approach towards dispute resolution." *In re U.S. Lines, Inc.*, 197 F.3d at 640 (quoting *Societe Nationale Algerienne v. Distrigas Corp.*, 80 B.R. 606, 610 (D. Mass. 1987)).

"In exercising its discretion over whether, in core proceedings, arbitration provisions ought to be denied effect, the bankruptcy court must still 'carefully determine whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing an arbitration clause.'" *Id.* (quoting *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1161 (3d Cir. 1989)). "This determination requires a particularized inquiry into the nature of the claim and the facts of the specific bankruptcy." *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006).

The Second Circuit has, in certain circumstances, declined to enforce arbitration agreements where the claim at issue was "integral" to the Bankruptcy Code's central purposes. *In re U.S. Lines, Inc.*, 197 F.3d 631, 641 (2d Cir. 1999); *see also In re Anderson*, 884 F.3d 382, 389–90 (2d Cir. 2018). In *In re U.S. Lines, Inc.*, the Second Circuit held that insurance-coverage disputes brought by a post-confirmation trust were core because the insurance policies were among "the most important assets of the debtor's estate," and resolution was "integral to the bankruptcy court's ability to preserve and equitably distribute assets." 197 F.3d 631, 640–41 (2d Cir. 1999). The Second Circuit

13

stressed that "arbitration of the disputes raised in the Complaint would prejudice the Trust's efforts to preserve the Trust as a means to compensate claimants." *Id.* at 641. Similarly, in *In re Anderson*, the Second Circuit found that arbitration of a discharge-injunction claim would "seriously jeopardize a particular core bankruptcy proceeding." 884 F.3d 382, 390 (2d Cir. 2018). The discharge, it explained, is "the foundation upon which all other portions of the Bankruptcy Code are built," and its enforcement is "integral to the bankruptcy court's ability to provide debtors with the fresh start that is the very purpose of the Code." *Id.* at 389–90; *comp. MBNA Am. Bank, N.A. v. Hill* (*In re Hill*), 436 F.3d 104, 109–10 (2d Cir. 2006) (compelling arbitration of an automatic-stay claim where the debtor's estate had been fully administered, the debtor had been discharged, and resolution of the claim would have no effect on the bankruptcy estate).

The same concern arises in the context of section 523 proceedings. Courts across jurisdictions have recognized that proceedings under section 523 to determine the dischargeability of a debt are "core" to the bankruptcy process and often present an inherent conflict with arbitration. *See, e.g.*, *Ackerman v. Eber (In re Eber)*, 687 F.3d 1123, 1131 (9th Cir. 2012) (affirming denial of motion to compel arbitration of dischargeability claims, noting that "allowing an arbitrator to decide the issues related to dischargeability . . . would conflict with important bankruptcy principles"); *Taylor v. Davis (In re Davis)*, No. 12-80034-dd (DRD), 2013 WL 425162, at *5 (Bankr. D.S.C. Feb. 1, 2013), aff'd, 607 F. App'x 298 (4th Cir. 2015) (holding that "submitting the issue of the dischargeability of [the] alleged debt . . . to arbitration would interfere with the centralization of determinations regarding [the debtor's] assets and legal obligations in [the bankruptcy] Court"); *Holland v. Zimmerman (In re Zimmerman)*, 341 B.R. 77, 80 (Bankr. N.D. Ga. 2006) (holding that

14

"[b]ecause the discharge is a critical, if not the central, objective of an individual's bankruptcy filing, arbitration of issues relating to dischargeability inherently conflicts with bankruptcy law").

That reasoning has particularly persuasive force here given this District's own prior decisions. In *In re Koper*, the bankruptcy court found that "a debt is not excepted from discharge under 11 U.S.C. § 523(a)(2), (4) or (6) unless a bankruptcy court makes that determination." 516 B.R. 707, 719 (Bankr. E.D.N.Y. 2014). The debtor there was sued on "a number of underlying causes of action" sounding in state law, but the court rejected the argument that those claims could be severed from dischargeability. *Id.* at 720. Instead, it held that "the issues of liability, amount of damages and dischargeability are so intertwined that such a separation of issues may not always be feasible," and that permitting arbitration would "subsum[e] the dischargeability issue and supplant the bankruptcy court's prerogative" over a matter "substantially core" to the bankruptcy process. *Id.* at 721.

The Court finds that compelling arbitration here would create a severe conflict with the Bankruptcy Code. The Bankruptcy Court correctly recognized that this case, like *In re Koper*, involves the issues of liability, amount of damages, and dischargeability, which "should essentially be considered as one proceeding that is 'substantially core' to the bankruptcy process." *In re Koper*, 516 B.R. 707, 721 (Bankr. E.D.N.Y. 2014). While the underlying causes of action may arise under state law and require findings on liability and damages, the dischargeability inquiry cannot be severed from those determinations. *Id.* Allowing arbitration here would jeopardize the Bankruptcy Court's ability to centralize and resolve the dischargeability of Appellees' alleged misconduct in diverting Kidline's assets,

a function "integral to the bankruptcy court's ability to . . . provide debtors with the fresh start that is the very purpose of the Code." *In re Anderson*, 884 F.3d 382, 389–90 (2d Cir. 2018).

Appellants further argued that arbitration should at least proceed against Sarah Paneth because "she is not subject to a dischargeability complaint" and "she is not even a debtor in bankruptcy," and thus resolution of those claims "will not impact the bankruptcy estate at all." The Court is not convinced. The claims against Sarah Paneth arise from the same alleged diversion of Kidline's assets that underlies the dischargeability proceeding, and her status as the debtor's spouse further entwines her potential liability with that of Mendel Paneth. Allowing arbitration to proceed separately would risk inconsistent findings and would therefore "seriously jeopardize a particular core bankruptcy proceeding." *In re Anderson*, 884 F.3d at 390.

Accordingly, the Court affirms the Bankruptcy Court's finding that compelling arbitration here would create a severe conflict with the Bankruptcy Code.

### 4.    Abuse of Discretion

Having determined that compelling arbitration would create a severe conflict with the Bankruptcy Code, the Court next considers whether the Bankruptcy Court abused its discretion in declining to enforce the arbitration agreement. *See MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 107 (2d Cir. 2006) (holding that where the bankruptcy court "has properly considered the conflicting policies in accordance with law, we acknowledge its exercise of discretion and show due deference to its determination").

Although the Court concludes that a valid arbitration agreement exists, that conclusion does not render the Bankruptcy Court's decision an abuse of discretion. The

Bankruptcy Court carefully considered the record, the competing policies of the FAA and the Bankruptcy Code, and the core nature of the dischargeability proceeding. Its decision rested not only on doubts about the enforceability of the agreement, but also on its well-grounded determination that liability, damages, and dischargeability are inseparably intertwined and that arbitration would "seriously jeopardize a particular core bankruptcy proceeding." *In re Anderson*, 884 F.3d at 390. Because the Bankruptcy Court "properly considered the conflicting policies in accordance with law," its exercise of discretion is entitled to deference. *See MBNA Am. Bank, N.A. v. Hill*, 436 F.3d at 107.

For these reasons, the Court affirms the Bankruptcy Court's order denying the motion to compel arbitration.

II.    <u>Motion for Relief from the Automatic Stay</u>

Having addressed the appellant's request to compel arbitration, the Court turns to its related challenge to the Bankruptcy Court's denial of Appellants' Motion for Relief from the Automatic Stay.

A.    <u>Relief from the Automatic Stay Was Properly Denied Under 11 U.S.C. § 362(d)(1)</u>

1.    <u>Legal Framework</u>

Section 362(d)(1) provides that "the court shall grant relief from the stay . . . for cause." Because "cause" is not defined in the Bankruptcy Code, the Second Circuit has adopted several non-exclusive factors to consider in determining whether litigation should continue in another forum. *Sonnax Indus., Inc. v. Tri Component Prods. Corp.* (*In re Sonnax Indus., Inc.*), 907 F.2d 1280, 1286 (2d Cir. 1990). In that case, the Second Circuit identified twelve factors that may guide the analysis, including:

(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy

17

case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Id*. (citation omitted). While the *Sonnax* factors provide a structured guide, "not all of these factors will be relevant in every case," and courts retain discretion to weigh them in light of the specific circumstances presented. *In re Mazzeo*, 167 F.3d 139, 142–43 (2d Cir. 1999).

The standard of review is equally well settled. As the Second Circuit has emphasized, "the decision of whether to lift the stay [is committed] to the discretion of the bankruptcy judge," and a reviewing court "may overturn a denial of a motion to lift the automatic stay only upon a showing of abuse of discretion." *In re Sonnax Indus., Inc.*, 907 F.2d at 1286 (quoting *Holtkamp v. Littlefield* (*In re Holtkamp*), 669 F.2d 505, 507 (7th Cir. 1982)); *see also Rich v. Maryland Nat'l Bank*, 42 B.R. 350, 354 (D. Md. 1984). Thus, while the Court must ensure that the bankruptcy court considered the proper legal framework, the Court does not reweigh the *Sonnax* factors de novo but instead asks only whether the court's decision fell within the range of permissible outcomes.

Here, Appellant contends that "[because] of the strong federal policy favoring arbitration, the traditional balancing test under *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990), for seeking relief from the automatic stay does not apply." In support, appellant relies solely on *In re Hagerstown Fiber Ltd. P'ship*, 277 B.R. 181, 204 (Bankr.

18

S.D.N.Y. 2002). That reliance is misplaced. In *Hagerstown*, the creditor initially moved for relief from the stay, and the court denied that request after "conduct[ing] the balancing inquiry mandated by *Sonnax* . . . and conclud[ing] that the relevant *Sonnax* factors weighed in favor of denying stay relief." *Id.* at 203. In a subsequent motion, the creditor sought both to compel arbitration and again to lift the stay. The court declined to revisit the stay issue under the law-of-the-case doctrine, and therefore addressed only the arbitration question, explaining that "stay relief motions give a bankruptcy court considerable discretion . . . [but] [t]he present motion affords me much less discretion— in fact, possibly none at all." *Id.* at 203–04. Thus, far from eliminating the *Sonnax* inquiry in stay-relief cases, *Hagerstown* reaffirmed that the *Sonnax* factors control and that bankruptcy courts retain discretion when deciding whether to lift the automatic stay.

The Court holds that the Bankruptcy Court correctly applied the *Sonnax* framework in evaluating appellant's motion for stay relief.

2.    Application of the *Sonnax* Framework

With this framework in mind, the Court turns to the Bankruptcy Court's application of the *Sonnax* factors and considers whether its determination that stay relief was unwarranted constituted an abuse of discretion.

Applying the *Sonnax* factors, the Bankruptcy Court reasonably concluded that stay relief was not warranted. Most importantly, the Bankruptcy Court found that the first *Sonnax* factor weighed heavily against arbitration, because "the arbitrator is unable to render a determination under dischargeability" and sending the dispute back to arbitration "would be a waste of time and financial resources of the Debtor." *In re Paneth*, Hr'g Tr. at 29:2–12, No. 1-22-41414-NHL (Bankr. E.D.N.Y. Feb. 8, 2024). The Bankruptcy Court also

19

determined that the second factor weighed against relief, as "the determination of the creditor's claims under Section 523 and the determination of the underlying dispute between the parties are intrinsically intertwined," making arbitration incompatible with the efficient administration of the bankruptcy case. *Id.* at 29:17–21. Finally, the court concluded that the tenth factor supported keeping the dispute in bankruptcy court, since "judicial economy and expeditious resolution of this litigation lies in the issues being decided in a single forum." *Id.* at 29:22–25. These findings reflect precisely the type of discretionary balancing entrusted to bankruptcy judges under *Sonnax* and fall well within the permissible range of outcomes.

Thus, the Court affirms the Bankruptcy Court's determination that the relevant *Sonnax* factors weighed against stay relief, and finds no abuse of discretion in its denial of the creditors' motion under section 362(d)(1).[6]

### CONCLUSION

For the foregoing reasons, the Court concludes that the Kings County Supreme Court's order is entitled to preclusive effect with respect to the existence of a valid arbitration agreement. Nonetheless, the Bankruptcy Court properly determined that arbitration of the dischargeability proceeding would create a severe conflict with the Bankruptcy Code's core purposes, and it did not abuse its discretion in denying

---

[6] Appellant also argues that the Bankruptcy Court erred by applying the Chapter 13 co-debtor stay, contending that it is inapplicable to Sarah Paneth because the underlying debt is not a "consumer debt." (Appellants' Br. at 58–59, ECF No. 4) This argument mischaracterizes the record. The Bankruptcy Court did not rule on the applicability of section 1301. Rather, the Bankruptcy Court noted that the case's conversion to Chapter 13 "g[ave] rise to the co-debtors stay under Section 1301," but emphasized that "no motion or briefing [had been submitted] to address whether the co-debtor stay should be lifted or is inapplicable as to Ms. Paneth." *In re Paneth*, Hr'g Tr. at 30:5–8, No. 1-22-41414-NHL. Because the Bankruptcy Court issued no ruling on section 1301, the Court does not reach the co-debtor stay argument.

enforcement of the arbitration agreement. The Bankruptcy Court also acted within its discretion in denying Appellants' request for stay relief under section 362(d)(1).

Accordingly, the February 8 Order of the United States Bankruptcy Court for the Eastern District of New York is affirmed, and the appeal is denied.

SO ORDERED.

Hon. Ramón E. Reyes, Jr.    Digitally signed by Hon. Ramón E. Reyes, Jr.
Date: 2025.09.17 15:15:03 -04'00'

_____

RAMÓN E. REYES, JR.
United States District Judge

Dated: September 17, 2025
        Brooklyn, New York